UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI EVE TOWLE,

      Petitioner,

v.

MILLICENT WARREN,

      Respondent.

_____/

Civil No. 2:12-CV-11120
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL *IN FORMA PAUPERIS***

      Lori Eve Towle, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, petitioner challenges her conviction for two counts of conspiracy to commit murder, Mich. Comp. Laws § 750.157a and Mich. Comp. Laws § 750.316. For the reasons stated below, the Court DENIES the petition for writ of habeas corpus.

**I. BACKGROUND**

      Petitioner was convicted by a jury in Berrien County Circuit Court. Petitioner has provided a detailed statement of facts in the pleadings that she has attached to her petition for writ of habeas corpus. Respondent has likewise provided a detailed factual summary of the case, which does not essentially conflict with petitioner's statement of facts. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v. McKee,* 526 F.3d

1

888, 894, n. 1 (6th Cir. 2008)("When a state's return to a habeas corpus petition fails to dispute

the factual allegations contained within the habeas petition, it essentially admits these

allegations"). Because the facts of this case have been repeated numerous times, they need not

be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See*

*Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997). Accordingly, this Court recites

verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed

correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410,

413 (6th Cir. 2009):

> This case arises out of the August 18, 2002, murder of Dale Peterson. Russell ("Rusty") Reitz was convicted of first-degree murder for shooting and killing Peterson. Defendant Lori Towle, who was Reitz's girlfriend at the time of the murder, was charged with conspiracy to murder Peterson. Defendant was also charged with conspiracy to murder Charles Casper, who drove Reitz to and from Peterson's home on the night of the murder and knew that Reitz killed Peterson.
> ***********************************************************************
> [P]eterson and defendant formed a partnership to operate a mortgage business. A couple of months before the murder, however, Peterson formed his own mortgage company and sought to dissolve his partnership with defendant. Defendant was upset because Peterson took her business and "everything" away from her. Moreover, defendant believed that Peterson knew she was embezzling money from the business and that he could "put her in jail for a long time."
>
> [D]efendant told several individuals that she wanted Peterson dead, and she did not say it jokingly. She told her friend and business contact Benjamin Cesaro that one day Peterson "[would] get his." She also told Casper that she wanted Peterson harmed and that she did not care what kind of harm was done to him.
>
> [D]efendant created an alibi for the night of the murder by going to Chicago and meeting with Cesaro. Reitz originally told Casper he was going to Chicago with defendant on the night of the murder, but he later said that he was not going with her and Casper "wasn't supposed to let anybody know." On the night of the murder, Reitz would not allow Casper to make any telephone calls from defendant's house. Immediately after the murder, Reitz wanted to go to Chicago to meet up with defendant and, on the way there, Reitz called her. After his telephone call with defendant, Reitz indicated that defendant "was all nervous and freaking out and

thought that he had already went to jail and that she was on her way back to Three Oaks." Defendant later asked Casper if he would have accompanied Reitz if he knew what Reitz was going to do. This statement strongly suggests that, when defendant made plans to go to Chicago, she knew Reitz was going to kill Peterson. Defendant subsequently instructed Casper about what to tell the police and, one week after the murder, she washed the inside and outside of Casper's car. Defendant also told Cesaro that it was a good thing she was with him at the time of the murder. At defendant's trial, Reitz admitted he previously testified, at his own trial, that defendant had something to do with the murder. Finally, defendant admitted to police that she could tell them every detail about the murder.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[D]efendant conspired with Reitz to kill Casper so that Casper could not testify at Reitz's trial. Casper was with Reitz and defendant on the night of Peterson's murder and knew many details about the killing. Further, Casper both told police about the murder and told defendant that he would not have driven Reitz to Peterson's house if he had known that Reitz was going to kill Peterson.

Moreover, the circumstances and the acts and conduct of defendant and Reitz establish that defendant and Reitz entered into an unlawful agreement to murder Casper. After Reitz was arrested, he offered a fellow inmate $10,000 to kill Casper and told the inmate that defendant had a rifle scope he could use. Reitz also informed the inmate that, if he could not get out of jail and kill Casper, defendant had someone else lined up to do it. The evidence revealed that defendant visited Reitz in jail after being banned from doing so. The inmate, whom Reitz solicited, later talked to Reitz's brother, Robby, about the plan to kill Casper, and Robby indicated that he was supposed to get the gun, the bullets, and the money from defendant.

She [Defendant] told Robby that she was "a shrewd businesswoman" and that she found someone in South Bend who would kill Casper for $800. Additionally, defendant and her friend, Terry Washington, talked to one of Washington's fellow gang members, who agreed to kill Casper for $2,000 if defendant paid $800 "up front." Defendant gave Washington a picture of Casper, showed him where Casper lived, and told him what kind of car Casper drove.

*People v. Towle*, No. 254487, at 1-4 (Mich.Ct.App. December 19, 2006)(internal citations omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 479 Mich. 860; 735 N.W. 2d

251 (2005).

Petitioner subsequently filed a post-conviction motion for relief from judgment pursuant

to M.C.R. 6.500, *et. seq.,* with the Berrien County Circuit Court, which was denied in two

different opinions. *People v. Towle*, No. 2003-400683-FC (Berrien County Circuit Court, June 30, 2009); *People v. Towle,* No. 2003-400683-FC (Berrien County Circuit Court, October 22, 2010). The Michigan appellate courts denied petitioner leave to appeal. *People v. Towle,* No. 304483 (Mich.Ct.App. September 13, 2011); *lv. den.* 491 Mich. 852; 808 N.W.2d 790 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.    Defendant-Petitioner's conviction should be reversed because there was insufficient evidence to find for the convictions of conspiracy.

II.   Defendant-Petitioner's convictions should be reversed because the prosecutor's closing arguments were improper.

III.  Defendant-Petitioner's convictions should be reversed because she was denied effective assistance of counsel where numerous instances of prior bad acts were admitted without objection nor was the limited jury instruction requested.

IV.   Defense trial counsel was constitutionally ineffective when she did not tell Defendant that she had a constitutional right not to testify and was ill prepared and inexperienced to represent Petitioner's conspiracy of 1st degree murder trial.

V.    Appellate counsel Ms. Dunne provided ineffective assistance of counsel when she failed to file a motion within the time provided for a *Ginther* hearing to preserve those issues on direct appeal, missed a filing deadline, did not file a brief for Ms. Towle's appeal, instead, Ms. Dunne filed a motion to be relieved as appellate counsel which was granted.

VI.   Daniel Rust the second appointed counsel to handle Defendant's appeal, was ineffective when he also ignored Defendant's plea to file a motion for a *Ginther* hearing and the brief Mr. Rust submitted at the last minute was cursory, merely parroting the work already done by the previous appellate counsel Ms. Dunne, which was clear to Defendant, that it had little success to prevail.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per*

5

*curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection

6

of his claim "was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,*
131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that
under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one."
*Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III. DISCUSSION

### A. Claims ## 2 and 4. The procedurally defaulted claims.

The Court will discuss petitioner's procedurally defaulted claims together first for
judicial economy and clarity. Respondent claims that petitioner's second and fourth claims are
procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal
habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual
prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to
consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,*
501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is
unnecessary for the court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. 527, 533
(1986). However, in an extraordinary case, where a constitutional error has probably resulted in
the conviction of one who is actually innocent, a federal court may consider the constitutional
claims presented even in the absence of a showing of cause for procedural default. *Murray v.
Carrier,* 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence
requires a petitioner to support the allegations of constitutional error with new reliable evidence
that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

Respondent contends that petitioner's second claim is procedurally defaulted because petitioner failed to preserve the issue by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claim for plain error only. *Towle*, Slip. Op. at 5-7.

The Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved her prosecutorial misconduct claim. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's second claim does not constitute a waiver of the state procedural default. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's second claim does not mean that the claim was not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's second claim is procedurally defaulted.

In the present case, petitioner has offered no reasons for her failure to preserve her claim of prosecutorial misconduct. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Although petitioner raised several ineffective assistance of counsel claims on direct appeal and in her post-conviction motion, she never raised a claim that trial counsel was ineffective for failing to object to comments contained in the prosecutor's closing argument. Because petitioner never raised in the Michigan courts a specific

claim about trial counsel's failure to object to improper comments made during the prosecutor's closing argument, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to her second claim. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for her procedural default, it is unnecessary to reach the prejudice issue regarding her second claim. *Smith*, 477 U.S. at 533.

Respondent contends that petitioner's fourth claim, which contains additional claims of ineffective assistance of counsel, is procedurally defaulted because petitioner raised these claims for the first time in her post-conviction motion and failed to show cause and prejudice for failing to raise the additional ineffective assistance of counsel claims in her appeal of right, as required by Mich.Ct.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(I).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last

9

reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on her direct appeal as their rationale for rejecting her post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Berrien County Circuit Court judge, with one exception, denied petitioner's post-conviction motion in regards to her ineffective assistance of trial counsel claims. The judge in his opinion initially cited M.C.R. 6.508(D)(3) and specifically noted that petitioner was required to show good cause and actual prejudice pursuant to this rule to obtain relief on her post-conviction claims. *People v. Towle*, No. 2003-400683-FC, at 3-5 (Berrien County Circuit Court, June 30, 2009). The trial judge then mentioned that petitioner was alleging the ineffective assistance of appellate counsel as cause to excuse her default. *Id.* at 4-5. The trial judge then proceeded to address petitioner's ineffective assistance of trial counsel claims in detail and found that these claims were meritless, thus, appellate counsel was not

ineffective for failing to raise these claims on petitioner's direct appeal, so as to establish cause to excuse the default. *Id.* at 5-13. The trial court agreed to grant an evidentiary hearing to determine whether trial counsel had been ineffective for failing to advise petitioner of her right to testify or to refrain from testifying. The trial court granted petitioner's request for a *Ginter* hearing on this issue alone. *Id.* at 13-17.

Based on the testimony at that hearing, the trial court determined that trial counsel was not ineffective. The trial court found that trial counsel had repeatedly advised Towle to not testify at trial, that trial counsel adequately advised Towle of her right to testify or not to testify, and that Towle decided to testify against the advice of counsel. The trial court held that despite appellate counsel's failure to raise this issue on appeal, petitioner was not prejudiced, counsel was not ineffective in failing to advise her of her right to testify or refrain from testifying; thus, petitioner would not have had a reasonable chance of acquittal nor would she be able to show that her conviction should not be allowed to stand. The judge denied petitioner's remaining ineffective assistance of counsel claim pursuant to M.C.R. 6.508(D)(3). *People v. Towle*, No. 2003-400683-FC, at 1-4 (October 22, 2010).

The trial court judge clearly denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), thus, petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. *See Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court

11

need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d at 267. Petitioner's fourth claim is procedurally defaulted.

### B. Claims ## 5 and 6. Ineffective assistance of appellate counsel.

With respect to petitioner's post-conviction claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse her procedural default. Petitioner, however, has not shown that appellate counsel was ineffective in failing to raise these claims on her direct appeal.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland [v. Washington*, 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular

claim [on appeal], but it is difficult to demonstrate that counsel was incompetent. *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that she raised for the first time in her post-conviction motion for relief from judgment. Appellate counsel filed a 32 page brief raising the first three claims contained within petitioner's *pro per* habeas petition. Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Berrien County Circuit Court in rejecting petitioner's post-conviction claims and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in her post-conviction motion were "dead bang winners."

13

Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for her procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claims raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In the present case, petitioner has failed to show cause to excuse her default of the claims that she raised for the first time on state post-conviction review. Because petitioner has not demonstrated any cause for her procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider her second and fourth claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim [Claim # I] is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that she is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of her claims, she

14

would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because her claims would not entitle her to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's second claim on direct appeal and by the Berrien County Circuit Court judge in rejecting petitioner's fourth claim when he denied petitioner's post-conviction motion, and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that her procedurally defaulted claims have any merit. In particular, the reasons justifying the denial of petitioner's procedurally defaulted claims were "ably articulated by the" Michigan Court of Appeals in rejecting petitioner's second claim on direct review and by the Berrien County Circuit Court in rejecting petitioner's fourth claim on post-conviction review, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins*, 328 F. Appx. 323, 324 (6th Cir. 2009). Petitioner is not entitled to habeas relief on her procedurally defaulted claims, nor was appellate counsel ineffective for failing to file for a *Ginther* hearing or failing to raise the additional claims, all of which have been reviewed and found to be meritless. The Court will thus deny petitioner's second, fourth, fifth, and sixth claims.

### C. Claim # 1. The insufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to support her convictions for conspiracy to commit first-degree murder.

It is beyond question that "the Due Process Clause protects the accused against

15

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*,

459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Petitioner contends that there was insufficient evidence to convict her of two counts of conspiracy to commit murder. Petitioner argues that there was no physical evidence or evidence directly linking her with the actions of Reitz, and that she only believed that Reitz was going to beat up Peterson. With regard to Casper, petitioner argues that there was even less evidence to show conspiracy to murder, and that she was only found guilty by association.

Under Michigan law, a conspiracy is "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982); *see also People v. Cotton*, 191 Mich. App. 377, 392–93; 478 N.W.2d 681 (1991). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568.

Although the agreement itself is the heart of the crime, "[d]irect proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence, and may be based on inference." *People v. Atley*, 392 Mich. 298, 311; 220 N.W.2d 465, 471 (1974) (citations omitted); *see also, Cotton*, 191 Mich.App. at 393. More specifically, "[t]o prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder." *People v. Buck*, 197 Mich. App. 404, 412; 496 N.W.2d 321

17

(1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853; 508

N.W.2d 502 (1993). "The prosecution must demonstrate that the conspirators deliberated and

planned the crime with the intent to kill the victim." *Id.* at 412.

The Michigan Court of Appeals found the petitioner had a motive to kill Peterson when

Peterson formed his own mortgage company and then sought to dissolve the partnership in a

mortgage company that he operated with petitioner.   Petitioner stated that Peterson took

"everything" away from her and that Peterson knew that she was embezzling money from their

partnership which could "put her in jail for a long time." The Michigan Court of Appeals also

found that through petitioner's words and actions, the evidence was sufficient to prove beyond a

reasonable doubt that petitioner intended to kill Peterson.   Petitioner told several individuals that

she wanted Peterson dead and told the business contact named Cesaro, who she utilized as an

alibi, that one day Peterson "[would] get his."   She also told Casper, the driver on the night of

the murder, that she wanted Peterson harmed and that she did not care what kind of harm was

done to him.   Furthermore, petitioner later asked Casper if he would have accompanied Reitz if

he knew what Reitz was going to do.   The Michigan Court of Appeals found that this statement

strongly suggested that when petitioner made plans to go to Chicago, she knew that Reitz was

going to kill Peterson.   Following the murder, petitioner cleaned Casper's car, instructed Casper

about what to tell the police, and later told Cesaro, the business associate in Chicago, that it was

a good thing that she was with him at the time of the murder.   Reitz later testified, at his own

trial, that petitioner had something to do with the murder.   Furthermore, petitioner later admitted

to the police that she could tell them every detail about the murder.

The Michigan Court of Appeals also found that after Reitz was arrested, he offered an

inmate $10,000 to kill Casper and told the inmate that petitioner had a rifle scope he could use. The inmate, solicited by Reitz, spoke to Robbie (Reitz's brother) who indicated that he was to get the gun, bullets and money from petitioner. Petitioner later told Robbie that she found someone in South Bend that would kill Casper for $ 2,000.00, if petitioner paid $ 800.00 up front. Petitioner and her friend Washington spoke to one of his fellow gang members after which petitioner produced a picture of Casper, showed this gang member where Casper lived, and told him what kind of car Casper drove. The evidence also shows that petitioner had visited Reitz at the jail in spite of being banned from visiting him.

The Michigan Court of Appeals rejected petitioner's arguments, finding petitioner had both a motive and intent to kill Peterson and that she conspired with Reitz to kill Casper, who was with Reitz on the night of Peterson's murder and knew many details pertaining to the murder. Because the Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was reasonable, petitioner is not entitled to habeas relief on her claim.

### D. Claim # 3. The ineffective assistance of trial counsel claim.

Petitioner next contends that she was deprived of the effective assistance of trial counsel when numerous instances of prior bad acts were admitted without objection and when trial counsel failed to request a limited jury instruction.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome

a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing

20

*Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly

deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

This means that on habeas review of a state court conviction, "[A] state court must be granted a

deference and latitude that are not in operation when the case involves review under the

*Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar

is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:
>
> > Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the

doubt, but must also affirmatively entertain the range of possible reasons that counsel may have

had for proceeding as he or she did. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011).

Petitioner claims that trial counsel was ineffective for failing to object to numerous

instances of prior bad acts evidence pertaining to evidence regarding her drug use, obtaining a

false identification to visit Reitz in jail, allegations of embezzlement from the business, and

allegations of breaking into Peterson's house and for failing to request a limiting jury

instruction.

The Michigan Court of Appeals found this evidence relevant and properly admitted

based on the following evidence:

> The prosecution introduced evidence of defendant's drug use to prove that defendant

had a motive to kill Peterson; in particular, the prosecution wanted to establish that defendant hated Peterson for dissolving the partnership and taking away the income she needed to support her drug habit. The prosecution also offered evidence regarding defendant's alleged embezzlement from her partnership with Peterson, as well as defendant's belief that Peterson knew about the embezzlement and "could put her in jail for a long time," to prove that defendant had a motive to kill Peterson. Motive is a proper purpose under MRE 404(b)(1). Further, the testimony regarding the alleged embezzlement was not so prejudicial that it deprived defendant of a fair trial. The prejudicial effect of the testimony was countered by a detective's testimony that during their investigation of defendant, they found no evidence of embezzlement. Finally, the testimony regarding defendant's alleged involvement in the breaking and entering of Peterson's house and defendant's use of a fake identification card to visit Reitz in jail was offered to prove defendant's plan or scheme in committing the conspiracies, which are proper purposes under MRE 404(b)(1).

*Towle*, Slip Op. at 5.

The Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claim, on the ground that the evidence that petitioner contends should have been excluded was admissible under M.R.E. 404(b). Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that this evidence was admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003). In the present case, the Michigan Court of Appeals' determination that petitioner was not denied the effective assistance of trial counsel because of counsel's failure to object to the admission of this "bad acts" evidence was not contrary to, or an unreasonable application of, clearly established federal law, and thus did not warrant federal habeas relief, in light of the Michigan Court of

22

Appeals' finding that this "bad acts" evidence was admissible under Michigan law. *See Pearl v. Cason*, 219 F. Supp. 2d 820, 828-29 (E.D. Mich. 2002).

Petitioner also claims that trial counsel failed to ask for a limiting instruction. In light of the fact that this evidence was admissible under 404(b), counsel's failure to request a limiting instruction was not ineffective. *See Jackson v. U.S.,* 248 F. Supp.2d 652, 657 (E.D. Mich. 2003).

Moreover, trial counsel's decision not to request limiting instructions may have been perfectly sound from a tactical standpoint, because "[S]uch instructions inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize...". *See Ferguson v. Knight*, 809 F.2d 1239, 1243 (6th Cir. 1987). *See also Ashe v. Jones*, 208 F.3d 212 (Table); 2000 WL 263342, at * 6 (6th Cir. February 29, 2000)(unpublished opinion)(stating that counsel may have decided, as part of a reasonable trial strategy, not to request an instruction limiting the jury's consideration of the prior bad acts evidence based on the belief that such an instruction would bring undue attention to the other acts); *Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir. 1987)(failure to request jury admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that ... counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"). In this case, petitioner has failed to overcome the presumption that counsel's decision to forego requesting cautionary instructions was a reasonable trial tactic to avoid giving undue attention to petitioner's prior bad acts. The other-acts evidence clearly demonstrated a plan, scheme and motive to allow admission of the evidence. Trial counsel may chose not to object to this evidence to avoid drawing attention to this testimony. Petitioner also cannot show that trial counsel was ineffective for failing to request the limiting jury instruction when trial

counsel may have decided to downplay the negative evidence, as well as that evidence's use under rule 404(b). Moreover, petitioner cannot show that, even had counsel requested such an instruction, that a different result would have occurred in light of the overwhelming evidence, including petitioner's own statements. Trial counsel was not ineffective for failing to object to properly admitted other-acts evidence or for failing to request a limiting jury instruction. Petitioner's third claim is without merit.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude

either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis.*

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED:    JUN 2 4 2014

25